IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

HENRY GIBBS JR.,                              )
                                             )
              Plaintiff                       )    1:25-CV-00095-RAL
                                             )
       vs.                                    )    RICHARD A. LANZILLO
                                             )    Chief United States Magistrate Judge
OFFICER HINDS, C.O. 6-2 OFFICER               )
IN R.H.U. SUED IN HIS INDIVIDUAL              )    MEMORANDUM OPINION ON
AND OFFICIAL CAPACITY; and                    )    DEFENDANTS' MOTION TO DISMISS
OFFICER BULLERS, C.O. 2-10 SHIFT              )
IN R.H.U. SUED IN HIS INDIVIDUAL              )
AND OFFICIAL CAPACITY,                        )    RE: ECF NO. 17
                                             )
              Defendants                      )

Defendants Hinds and Bullers have moved to dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P 12(b)(6). *See* ECF No. 17. For the following reasons, Defendants' motion will be GRANTED in part and DENIED in part.[1]

I.     Relevant Background and Procedural History

Plaintiff Henry Gibbs Jr. ("Gibbs") is a former inmate of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution in Forest County ("SCI-Forest").[2] He commenced this pro se civil rights action in the Court of Common Pleas of Forest County against SCI-Forest Corrections Officers Hinds and Bullers. ECF No. 1-1 (Complaint). Defendants removed the action to this Court based on federal question subject matter jurisdiction. ECF No. 1. Gibbs later filed

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge as authorized by 28 U.S.C. § 636.

[2] Gibbs has been paroled and currently lists his address as at a halfway house in Coalport, Pennsylvania.

an Amended Complaint (ECF No. 13), which remains the operative pleading before the Court.

The Amended Complaint alleges that the Defendants forced him to be handcuffed in a kneeling position with his hands behind his back despite their knowledge that doing so placed damaging pressure on his injured left knee and despite their having the option to restrain his hands in front of his body in a standing position. The Amended Complaint asserts an Eighth Amendment claim for cruel and unusual punishment, Fourteenth Amendment due process and equal protection claims, and a state law negligence claim against each Defendant in his individual and official capacities. As relief, the Amended Complaint seeks compensatory and punitive damages from each Defendant.

In support of their motion to dismiss, the Defendants argue that (1) Gibbs' claims against the Defendants in their official capacities are barred by the Eleventh Amendment: (2) Gibbs' state law claims are barred by sovereign immunity; (3) the Amended Complaint fails to allege facts sufficient to support a procedural or substantive due process claim, and (4) the Amended Complaint fails to allege facts sufficient to state an equal protection claim. *See* ECF No. 18 (Defendants' Brief). Their brief includes no argument challenging the sufficiency of Gibbs' Eighth Amendment claim. *See id.* Gibbs has filed a brief in opposition to the motion. ECF No. 21.

II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555;

*McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations of the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Finally, because Gibbs is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be unartfully drawn and should be read "with a measure of tolerance"). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

III.    Factual Allegations and Claims

For the purposes of the Defendants' motion, the Court accepts as true the following factual allegations of the Amended Complaint. From September 24, 2025

4

until October 7, 2025, Gibbs was housed in the SCI Forest RHU or its "KC" unit for non-disciplinary reasons. ECF No. 13, ¶ 1. At that time, Gibbs was 73 years old and weighed 270 pounds. *Id.*, ¶¶ 13, 15. Prior to his placement in the RHU, a physical therapist who had treated Gibbs advised him that he needed a left knee joint replacement, and that this surgery was the only viable option to address his knee pain. *Id.*, ¶ 2.

Inmates in the RHU were subject to periodic searches of their cells during which the inmate would step out of his cell. During such searches and movement of the inmate for shower calls, prison policy required that the inmate be restrained before exiting his cell. *Id.*, ¶ 3. The prison policy specified that the preferred method of restraint was to handcuff the inmate with his hands placed together behind his back with palms facing outward. *Id.*, ¶ 4. This preferred method of restraint required the inmate to kneel and place his entire body weight on his knees while extending his hands through the cell door wicket for placement of the handcuffs. *Id.*, ¶ 6(A). Alternatively, policy authorized restraint by means of a restraint belt. This method involved cuffing the inmate's hands together in front his body where the cuffs are attached to the restraint belt. This method does not require the inmate to kneel. *Id.*, ¶ 4. Gibbs asked to be restrained in front of his body using a restraint belt. Gibbs informed Hinds that his left knee was injured and that he needed to be handcuffed without kneeling to prevent further knee damage. *Id.*, ¶ 11. Gibbs also advised Bullers on several occasions that his left knee could not support his body weight. *Id.*, ¶ 24. Despite his request and pleas, Gibbs was required to kneel for handcuffing

behind his back for shower calls and cell searches conducted between September 24, 2025, and October 7, 2025. Requiring Gibbs to kneel on these occasions caused further injury to his knee joint, which caused him to have "an obvious limp that will likely last a lifetime." *Id.* ¶ 12. Gibbs witnessed Hinds handcuff another inmate using the alternative method when he was escorted from his cell.

Gibbs' Amended Complaint does not include separate counts. Although it includes various legal terms, many appear inapplicable to its factual allegations. Construing the Amended Complaint's allegations liberally, the Court has identified the following claims:

1. An Eighth Amendment conditions-of-confinement/cruel-and-unusual punishment claim against both named Defendants;

2. A state law negligence claim against both named Defendants;

3. A Fourteenth Amendment due process claim against both named Defendants; and

4. A Fourteenth Amendment equal protection claim against both named Defendants.

IV. Defendants' Motion to Dismiss

Defendants' motion raises four grounds for dismissal: (1) the Eleventh Amendment bars any claims for monetary damages against Defendants in their official capacities; (2) sovereign immunity bars any claim for negligence against Defendants; (3) the Amended Complaint fails to state a Fourteenth Amendment claim for violation of Gibbs' procedural or substantive due process rights; and (4) the Amended Complaint fails to state a Fourteenth Amendment equal protection claim because it does not allege facts sufficient to support a finding that Defendants'

6

handcuffing of another inmate using the alternative method was done intentionally and with no rational basis.[3]

V.    Discussion

A. All claims for monetary relief against Defendants in their official capacities will be dismissed.

Gibbs asserts his constitutional claims under 42 U.S.C. § 1983, which authorizes an action in federal court to remedy a violation of rights secured by the Constitution or laws of the United States "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).    Gibbs' Amended Complaint seeks compensatory and punitive damages against Defendants in their respective official and individual capacities.    To the extent he seeks money damages against the Defendants in their official capacities, his claims are barred by the Eleventh Amendment, which proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their official capacities. *See Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity).    The DOC is an agency of the Commonwealth of Pennsylvania, and, as such, it and its agents and employees acting in their official capacities are immune from monetary damages. *See Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019).    Gibbs' claims for monetary relief

---

[3] Defendants' motion requests dismissal of the Amended Complaint in its entirety. *See* ECF No. 17, p. 3.    Their brief, however, raises no challenge to the legal sufficiency of Gibbs' Eighth Amendment claim.    Accordingly, the Court will deny Defendants' motion to the extent it seeks dismissal of this claim.

against the Defendants in their official capacities will therefore be dismissed with prejudice.[4]

B. Gibbs has abandoned any negligence claim under Pennsylvania law.

Gibbs' Amended Complaint alleges that Defendants had a duty to protect Gibbs from "all hurt, harm, and danger" and that Defendants failed this duty by not using any preventative measures to ensure Gibbs' health and safety. *See* ECF No. 13 ¶¶ 10, 12, 23, 25. Defendants and the Court liberally construed this allegation as asserting a negligence claim.[5] In his brief in opposition to Defendants' motion, however, Gibbs disclaims any intent to assert a negligence claim. He states that he "never used the word negligence in [his] Amended Complaint." ECF No. 21 ¶ 3. Therefore, to the extent the Amended Complaint can be construed as raising a state law negligence claim, the Court finds that Gibbs has expressly abandoned the claim.[6]

---

[4] The Amended Complaint does not seek injunctive or prospective declarative relief against the Defendants in their official capacities. Such relief is not subject to Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). In any event, Gibbs' release from SCI-Forest makes such relief unavailable against the Defendants.

[5] In addition, Gibbs' original Complaint expressly asserted "negligence" as a theory of liability. *See* ECF No. 1-1, ¶ 1.

[6] Furthermore, under the facts alleged in this case, any negligence claim would be barred by the doctrine of sovereign immunity. Sovereign immunity shields state officials, including DOC officials acting within the scope of their duties, from most state law tort claims brought in federal court unless the immunity has been specifically waived by the General Assembly. *See* 1 Pa. C.S. § 2310; *Brown v. State Corr. Inst.-Albion*, 2023 WL 11645842, at *7 (W.D. Pa. Nov. 8, 2023), *report and recommendation adopted*, 2024 WL 1363752 (W.D. Pa. Mar. 31, 2024). The Pennsylvania General Assembly "has waived sovereign immunity for claims of negligence" in nine narrowly defined categories of conduct, none of which applies here. *See* 42 Pa. C.S.A. § 8522(b).

C. Gibbs' allegations fail to support that Defendants violated his procedural or substantive due process rights.

A court's examination of procedural due process under the Fourteenth Amendment requires a two-step analysis. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). First, the court must determine whether the state has interfered with an existing protected liberty or property interest. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents*, 408 U.S. at 571). A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). Second, and if and only if a plaintiff establishes the existence of a protected interest, the court must then examine whether the procedures attendant upon the deprivation were constitutionally sufficient. *Id.*, at 471.

"To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which... imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (emphasis in *Griffin*). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976).

Here, Gibbs cannot meet the first element of establishing a protected liberty interest. The types of protected liberty interests are not unlimited. The interest must

9

rise to more than an abstract need or desire and must be based on more than a unilateral hope. *See Brown v. Beard*, 2011 WL 1085890, at \*19 (W.D. Pa. Mar. 21, 2011). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979) (citation omitted). The Supreme Court announced a new rule for determining whether a prisoner had a protected liberty interest created under statute or regulation by shifting the focus of inquiry from the specific language of the law or regulation to whether the deprivation suffered by the prisoner imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472 (1995).

Placement in restraints for a short period of time is not an atypical and significant hardship for a prisoner. Courts have repeatedly held that placement in restraints for similar or longer periods does not implicate a liberty interest. *See Key v. McKinney*, 176 F.3d 1083, 1085, 1087 (8th Cir. 1999) (affirming dismissal of procedural due process claim where prisoner was placed in handcuffs chained to leg shackles for 24 hours); *Williams v. Burton*, 943 F.2d 1572, 1574, 1576-77 (11th Cir. 1991) (no procedural due process claim where prisoner was placed in four-point restraints and his mouth taped shut for 28.5 hours), *cert. denied*, 505 U.S. 1208 (1992); *Shand v. Chapdelaine*, 2018 WL 279980, at \*2-4 (D. Conn. Jan. 3, 2018) (dismissing procedural due process claim where prisoner placed in "handcuffs, leg irons, and a tether chain connecting his hands to his legs" for three days); *Grady v.*

*Holmes*, 2007 WL 2507395, at \*3 (S.D. Ga. Aug. 30, 2007) (placement in restraint chair for 44 hours did not constitute procedural due process violation).

The absence of a liberty interest also dooms Gibbs' substantive due process claim because a protected property or liberty interest is also an essential element of a substantive due process claim. *See Roberts v. Mentzer*, 382 Fed. Appx. 158, 166 (3d Cir. 2010). Accordingly, Gibbs' procedural and substantive due process claims will be dismissed.

### D. Equal Protection

To state a Fourteenth Amendment equal protection claim, an inmate must allege facts to support an inference of purposeful discrimination. *See Hernandez v. New York,* 500 U.S. 352 (1991); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). This requires more than demonstrating discriminatory impact. *See Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264–65 (1977). Discriminatory purpose implies that the decisionmaker selected a particular course of action at least in part because of, not merely despite, its adverse effects upon an identifiable group. *Hernandez,* 500 U.S. at 360. An inmate must allege facts specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision. *McCleskey,* 481 U.S. at 293.

Gibbs alleges that "I witnessed inmate Chris Miller handcuffed from the front when he was escorted from his cell." ECF No. 13 ¶ 17. Gibbs provides no further factual allegations beyond this statement. This allegation alone does not support purposeful discrimination against Gibbs. A single instance where another inmate

11

was restrained using a restraint belt is insufficient to support a plausible inference that Gibbs was refused this restraint method for legally impermissible reasons. Gibbs' equal protection claim will therefore be dismissed.[7]

VI.    Conclusion

For the foregoing reasons, the Court will enter an Order granting in part and denying in part Defendants' motion to dismiss the Amended Complaint. The motion will be granted as to (1) all claims for monetary relief against the Defendants in their official capacities, (2) Gibbs' negligence claim (to the extent the Amended Complaint can be construed as raising this claim), (3) Gibbs' Fourteenth Amendment procedural and substantive due process claims, and (4) Gibbs' Fourteenth Amendment equal protection claim. Gibbs' official capacity claims and negligence claim will be dismissed with prejudice because any attempt to amend as to these claims would be futile. Gibbs' Fourteenth Amendment due process and equal protection claims will be dismissed without prejudice. Gibbs may file a second amended complaint to cure the deficiencies of these claims within 20 days of the Court's accompanying order.

Defendants' motion to dismiss will be denied to the extent it requests dismissal of Gibbs' Eighth Amendment claim.

---

[7] In his original Complaint, Gibbs alleged that "on certain days, between 9-24-24 and 10-7-24, while I was in the RHU, I witnessed both Defendants escort inmate Chris Miller [] out of his cell while being handcuffed from the front: inmate Miller is a white inmate around my age, and because inmate Chris Miller is white and I am black, I am alleging that I was also denied equal protection of the law..." ECF No. 1-1 ¶ 9. Gibbs' Amended Complaint omits these allegations. Because the Amended Complaint supersedes the prior Complaint, the Court does not construe the Amended Complaint as raising a race discrimination claim under 42 U.S.C. § 1981. Like a claim under § 1983, "[t]o prevail on a claim under 42 U.S.C. § 1981, the plaintiff must present evidence of the defendant's discriminatory intent, as that section reaches only purposeful discrimination." *Taylor v. City of St. Louis*, 702 F.2d 695, 697 (8th Cir. 1983) (per curiam) (citing *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375 (1982)).

.

DATED this 24th day of March, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE